UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____.

UNITED STATES OF AMERICA,

                              Docket No. 16 Cr. 119 (PGG)

     -v.-


ROHAN ASWAT,
                    Defendant.
_____.


## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, ROHAN ASWAT, respectfully submits this Memorandum in aid of his plea for leniency at sentencing at the hearing to be held on April 10, 2018 for his conviction for assault on a federal officer.

The defendant assumes the Court is fully familiar with the procedural history of this case, having had a full competency hearing and having received periodic updates of Mr. ASWAT's treatment status. This Memorandum will mainly recount the events and treatment history of the defendant since he entered his guilty plea and was released on bail conditions by the Court. As explained below, exhibits submitted herewith will be sent directly to Chambers and the government so that they may be maintained under seal, if the Court so approves.

Because the defendant is a lawful permanent resident of the United States whose ability to remain here after a judgment of conviction is entered depends on the sentence imposed, counsel specifically requests that the Court impose a sentence of Probation. Any sentence of incarceration, even to "time served" (which was about 22 months) would have very negative immigration consequences. First, any sentence of a year or more (even if already served) would make the crime of conviction an "aggravated felony" under the Immigration and Nationality Act, and it would be impossible in Mr ASWAT's case for him to remain in the United States. See 8 U.S.C. § 1101(a)(43)(F) [assault defined as an aggravated felony if the sentence is "at least one year."[1]] If the Court were to sentence the defendant to a term of over 180 days there would also be an immigration consequence in that for any immigration benefit for which the defendant would have to show "good moral character," such as for becoming a U.S. citizen, he would be barred by 8 U.S.C. § 1101(f)(7).

In imposing any sentence here it should be noted that Mr. ASWAT was in federal custody for 22 months, often in a terrible condition because of his mental

---

[1]Note that there is a misprint in the official version of this statute which renders in impossible to determine whether Congress meant to say a term of imprisonment of at least one year "is imposed" or "may be imposed." Because Congress never cured the ambiguity the Courts have applied the Rule of Lenity to interpret the statute to mean "is imposed."

health status, and we submit that no sentence to be imposed should result in Mr. ASWAT having to re-enter prison.

<u>Exhibits</u>

Because of the sensitive personal nature of some of the information relevant to this sentencing proceeding, counsel is submitting all the exhibits herein directly to Chambers (with a copy to the government) and asking that they be maintained under seal. Counsel is also refraining from quoting directly from the exhibits, but rather, has highlighted the exhibits to emphasize relevant parts.

Therefore, I ask that the exhibits be maintained under seal, and that the Court deem those parts of the exhibits which are highlighted to be sections of the exhibit that counsel would normally quote in this Memorandum.

Finally, one of the medical records is somewhat voluminous: counsel is submitting the entire record (77 pages) as an exhibit for completeness, [**Exhibit D**], but also a second exhibit which includes selected pages from the larger exhibit with the passages highlighted [**Exhibit C**].

<u>Objections to the Probation Department Pre-Sentence Report</u>

The only objection counsel has to the Pre-Sentence Report (hereinafter, "PSR") prepared by the Probation Department is that the report lacks significant information about the history of the defendant's competency proceedings and

post-release mental health treatment (including his civil commitment for four weeks or so). Reports of those have been provided to the Probation Office by counsel but counsel has not seen a revised report adding the information to be learned from those reports.

Prior Criminal Record

As of the time Mr. ASWAT was first brought into federal court on the first of his two federal cases (assault on security personnel at the federal building located at 26 Federal Plaza in New York on May 26, 2015), it was not known that he had another pending matter in the Criminal Court of the City of New York for a very similar altercation involving security officers at 26 Federal Plaza where he was charged with resisting arrest and obstructing governmental administration as misdemeanors for an incident which occurred on April 7, 2015. Mr. ASWAT was released on a bail package, and while on release he was arrested again on October 5, 2015 for trespass as a misdemeanor for attempting to enter an office building after being told by the security personnel that the office he wished to go to was closed for the day. On November 13, 2015 Mr. ASWAT's federal bail was revoked for other non-compliance with the terms of his release [which counsel submits was a direct result of his mental illness] and he went back into federal custody for 22 months. During that time bench warrants were issued in Criminal

Court on the two cases.

While the original federal case was pending before Judge John Keenan of this court  Mr. ASWAT was charged with assaulting a federal Marshal in Judge Keenan's courtroom, resulting in the instant indictment. After going through a competency evaluation, a competency hearing, a finding of incompetency, and referral to Butner FCI in North Carolina for treatment, Mr. ASWAT was found to be "restored to competency" after receiving medication at Butner, and he was returned to this Court where he entered a guilty plea on August 31, 2017 to the charge of assault. Pursuant to a plea agreement the case pending before Judge Keenan was "nolle prossed." A bail hearing was then held before this Court on September 6, 2017, and Mr. ASWAT was released on conditions agreed to by the parties, which included a requirement that Mr. ASWAT be admitted to a psychiatric treatment facility for evaluation and treatment as soon as practical after his release.

The bond was signed on that day (September 6, 2017), but before being released the Marshals discovered that there was an outstanding arrest warrant from Criminal Court for a third incident in which Mr. ASWAT was accused of criminal mischief for breaking a window, but for which he had never been arrested or brought to Court. Mr. ASWAT was transferred that evening to Central Booking in

the basement of 100 Centre Street, New York, and waited all night to be brought before a judge the following morning. At that time the two other warrants [from 2015] had been discovered, so he was arraigned on the criminal mischief charge (under Docket number 2017NY046685), and "returned on a warrant" on the other two charges, Docket number 2015 NY021437 for "resisting arrest" at 26 Federal Plaza, and Docket number 2015NY065139 for the trespass case. This counsel appeared at the Arraignment Part at 100 Centre Street and explained the circumstances of the federal case and the reason warrants had been issued on the Criminal Court cases to the Judge, who then released Mr. ASWAT on his own recognizance on all three charges and set a return date in October, 2017.

The experience of being in the holding area in Central Booking was very upsetting to Mr. ASWAT, and his fragile mental stability could not withstand the pressure and fear caused by it. As Mr. ASWAT's brother, Dave Aswat, was trying to get him home to the apartment of his aunt in Brooklyn where he was to live (under electronic monitoring, which had been installed by Pre-Trial Services), Mr. ASWAT became very agitated and refused to enter the apartment, claiming he had been kidnaped. Mr. ASWAT insisted that the police be called, who did come, and managed to answer some "legal" questions and convince him to go into his aunt's house.

For the next few days he was very agitated and was threatening to remove the electronic monitoring ankle bracelet and to go back to 26 Federal Plaza. He made some calls to the FBI. During this time Mr. ASWAT's brother was conferring with counsel about trying to get him to the Belleview Psychiatric Hospital, but we could not figure out a way to do that against without Mr. ASWAT's agreement. A "mobile" mental health unit came to the house and interviewed Mr. ASWAT and the family, but at that time Mr. ASWAT would not agree to go to the hospital [**Exhibit D** contains some records of this]. Finally, on September 11, 2017, the police were called by Mr. ASWAT himself, who insisted that he had been kidnaped. Although Mr. ASWAT's brother called to explain the situation, they came to the house to make sure that there really was no kidnaping. The family asked the police to take Mr. ASWAT to Belleview, but the police said that they could only take him to the closest psychiatric hospital. The police took Mr. ASWAT to Kings County Psychiatric Hospital where he was admitted (thus accomplishing one of the conditions of his release).

Mr. ASWAT was evaluated by several doctors at Kings County during the next few days, and counsel remained in contact with them and with Mr. ASWAT's brother, Dave Aswat, during that time. He was formally admitted to the Kings County Hospital Center's Behavioral Health Ward on September 11, 2017, and

was not discharged from full in-patient confinement until November 8, 2017.
During that time the physicians applied to the Mental Health "Part" of Kings
County Supreme Court for permission to apply medications against Mr. ASWAT's
will. At the hearings Mr. ASWAT, in fact, agreed to take the medications.

When he was scheduled for release on November 8, 2017, after being
evaluated for whether he was a danger to himself or others, he was admitted to the
hospital's "Partial Hospital Program," where he lived with his aunt but went back
to the hospital every day for several hours per day until December 22, 2017. At
that point he continued in the "Adult Outpatient Department" under the care of Dr.
John Wilson, MD, Psychiatric Resident. (See **Exhibit A**, letters from Kings
County Hospital physicians confirming his treatment status, dated November 24,
2017 and March 14, 2018, respectively). NOTE that Dr. Wilson is preparing a
detailed report of the history of his treatment of Mr. ASWAT, but it will not be
ready until next week – counsel will submit it to the Court as soon as it is
prepared.

During the time that Mr. ASWAT was confined to Kings County Hospital
the date set for his return to Criminal Court on the three misdemeanor charges
past. Counsel forgot to go over to the Court to inform it that Mr. ASWAT was
confined to the hospital, and did not realize the error until a month later when

counsel went to the Court on the date he thought had been set and discovered that it was wrong by a month. Since re-opening a case in "warrant" status is difficult when the defendant is not present counsel decided to wait until Mr. ASWAT was released. Prior to having Mr. ASWAT return to court counsel arranged with the Assistant District Attorney handling the three cases to resolve all of them with a disposition, and on March 15, 2018, in Part B of Criminal Court, Mr. ASWAT entered a plea to disorderly conduct, a violation [not a crime] to each of the dockets and received a sentence of "time served." [Note that counsel has not yet obtained certificates of disposition for the three cases, but counsel was personally present for the proceedings and avers that the disposition of each is as stated herein; counsel will supply certificates of disposition within the next few days.] The three dispositions would be "petty offenses" pursuant to the Guidelines and therefore should have no effect on the Guidelines calculation.

What is clear from the charges in the three Criminal Court cases is that Mr. ASWAT was suffering from the same autism-related mental illness during most of 2015 that he was diagnosed with having after he was evaluated on the question of competency. None of the events was particularly serious, but all reflected a level of anger that is caused, as we learned in the competency hearing, by the defendant's autism (mainly, not being able to stand being touched), and the

psychiatric conditions which stem from the autism when various stressors (like being incarcerated) are applied. **Exhibit E** is several photographs taken of Mr. ASWAT a few years ago in Barbados from which it appears that he is a happy, well-adjusted individual. Obviously something happened after he came to the United States which pushed his autism into a level of psychosis. His condition may also have been aggravated by a condition which has resulted in his eye being aimed in the wrong direction, for which Mr. ASWAT is being considered for surgery.

The psychiatric treatment reports being submitted under a request to be sealed [and, I expect, the letter from Dr. Wilson which has yet to arrive], show that Mr. ASWAT is almost fully recovered as a result of a regimen of medication, which started at FCI Butner when he became sufficiently restored to competency (after being almost completely "catatonic" – in the layman's use of the term), and then through adjustments to the regimen done at Kings County Medical Center.

Finally, **Exhibit B** is a letter from Mr. ASWAT's brother, Dave Aswat, in which he describes from his "lay" point of view the progress that Mr. ASWAT has been making, the observable positive effect of the medication regimen, and the continued need for mental health care.

<u>Defendant's Sentencing Request</u>

Counsel asks the Court to set a sentence that will allow Mr. ASWAT to continue to improve and to receive the humane and apparently successful treatment that he has been receiving since he was released from prison. As the Court will remember very well, being incarcerated is about the most counter-productive thing that could be done to Mr. ASWAT. Since the agreed-upon sentencing guidelines range in his case is 27 to 33 months, and since he was incarcerated for 22 months (from November 13, 2015 to September 6, 2017), he has basically served the full amount of jail time that would be computed, based on his receiving 54 days per year "good time," on a sentence at the bottom end of the Guidelines range.

As is well-known to the Court, the factors listed in 18 U.S.C. § 3553(a) include the following:

> (a) Factors To Be Considered in Imposing a Sentence.— <u>The court shall impose a sentence sufficient, but not greater than necessary</u>, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—   ...

-11-

(D) <u>to provide the defendant with needed</u> educational or vocational training, <u>medical care,</u> or other correctional treatment in the most effective manner... [Emphasis added.]

The fact is that Mr. ASWAT is a stellar example of psychiatric treatment working as it is supposed to. The level and speed of improvement is remarkable. There is no question that Mr. ASWAT was not malingering and that what he needed was the support of psychiatric medications. Now that the regimen of medications has been settled upon Mr. ASWAT is functioning very well in society. To the extent that his stability is still somewhat fragile, he has the important and selfless support of his brother, Dave Aswat, and his aunt, Veronica Braithwait, and his mother in Barbados.

Finally, counsel again refers the Court to the very thoughtful and objective letter written by Mr. ASWAT's brother, Dave, submitted herewith as **Exhibit B**, for details of some of the problems Mr. ASWAT has overcome in the months since he was released from federal custody, including the need for eye surgery which has yet to occur, and Dave Aswat's optimism that Mr. ASWAT will finally regain the ability, to the extent he has not completely done so, to be a productive, peaceful, law-abiding member of society.

<u>Conclusion</u>

For the reasons stated above counsel requests that the Court impose a period

of probation supervision.

Dated:      New York, New York
            March 27, 2018


                        Respectfully submitted,

                         */s/ Thomas H. Nooter*
                        Thomas H. Nooter
                        Attorney for Defendant
                        Freeman, Nooter & Ginsberg
                        75 Maiden Lane, Suite 503
                        New York, NY 10038
                        (212) 608-0808
                        Email: nooteresq@gmail.com

cc:    Office of the United States Attorney (by ECF and email)
       Attention: AUSA Elizabeth Hanft, Esq.

       United States Probation Office
       Attention: USPO Jemmard M. Thomas (by email)