

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One St. Andrews Plaza*
*New York, New York 10007*

April 3, 2018

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re:  **United States v. Rohan Aswat,**
>       **16 Cr. 119 (PGG)**

Dear Judge Gardephe:

The Government respectfully submits this letter in connection with the sentencing of defendant Rohan Aswat ("Aswat" or "the defendant"), which is scheduled for Tuesday, April 10, 2018, at 10:00 a.m. As stipulated by the parties and set forth in the Presentence Investigation Report filed on April 3, 2018 (the "PSR"), the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range applicable to Aswat is 27 to 33 months' imprisonment. For the reasons set forth below, the Government respectfully submits that a sentence within that range would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

### I.    Offense and Relevant Conduct

As detailed in the PSR, on January 5, 2016, Aswat assaulted a Deputy United States Marshal ("Marshal-1")—breaking his nose and causing irreparable damage to his eye—during a court appearance in a criminal case ("Case-1"). Case-1 stemmed from a separate assault by Aswat on federal officers at 26 Federal Plaza, in which Aswat lunged at those officers and, upon their attempts to subdue him, punched and kicked them, causing them to sustain cuts and bruises. (PSR ¶¶ 22, 55.)

Towards the end of the conference in Case-1, Aswat became angry, and began making threats that he would leave the courthouse. (PSR ¶ 24.) Marshal-1 thereafter approached Aswat and attempted to take him into custody. (PSR ¶¶ 25–26.) After resisting Marshal-1's efforts to restrain him, Aswat lifted his right fist and punched Marshal-1 on the left side of his face. (PSR

¶¶ 26–27.) As the struggle continued, Aswat again raised his right hand and punched Marshal-1 on the left side of his face. (PSR ¶ 27.)[1]

After Aswat was apprehended, a different Deputy United States Marshal ("Marshal-2") was involved in transporting him back to a holding cell. (PSR ¶ 29.) During that transport, Aswat head-butted Marshal-2, causing injury to his forehead. (PSR ¶ 29.)

## II. The Defendant's Plea and Applicable Guidelines Range

On August 31, 2017, Aswat pleaded guilty to Count One of Indictment 16 Cr. 119 (PGG), charging him with assaulting and inflicting bodily injury on a federal officer, in violation of Title 18, United States Code, Section 111(a)(1) and (b).

Aswat pleaded guilty pursuant to a plea agreement in which the parties stipulated that his total offense level under the Guidelines is 18, based on a base offense level of 14, a 5-level enhancement because Aswat's victim sustained serious bodily injury, a 2-level enhancement because Aswat was convicted under 18 U.S.C. § 111(b), and a 3-level reduction for Aswat's acceptance of responsibility. (PSR ¶¶ 6(a)-(g).) The parties further stipulated that Aswat had zero criminal history points, placing him in Criminal History Category I. (PSR ¶ 6(h).) Accordingly, the parties stipulated that the applicable Guidelines range was 27 to 33 months' imprisonment. (PSR ¶ 6(i).)

In the PSR, the Probation Department concurred with the parties' Guidelines calculation (PSR ¶¶ 34-51, 80), and recommended that the Court sentence Aswat to 30 months' imprisonment (PSR pp. 18, 20).

## III. Applicable Law

Although the Guidelines are no longer mandatory, they provide strong and relevant guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that range "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). As the Second Circuit has remarked *en banc*, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (internal quotation marks omitted). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.

---

[1] A video recording of the assault on Marshal-1 is available upon the Court's request.

Hon. Paul G. Gardephe
April 3, 2018
Page **3** of **5**

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a), including, among others, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, including:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent the District Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 50).

### IV.  Discussion

In light of the nature and circumstances of the instant offense, as well as the history and characteristics of the defendant, the Government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 27 to 33 months' imprisonment in this case.

As to the nature and circumstances of the offense, the defendant's conduct in this case was extremely serious. Aswat's actions severely injured Marshal-1, requiring nasal surgery and causing irreparable injury to his eye, as well as restricted breathing and throbbing pain. Individuals like Marshal-1 put themselves at risk in order to preserve the safety and integrity of our courthouses, and an assault on someone engaged in discharging his duty to protect the public is a particularly troubling occurrence. The defendant's conduct here, as well as the relevant conduct described above, evinced a disregard for legal authority—in this case, both the legal ruling detaining him, and the authority of Marshal-1 and subsequently Marshal-2 to direct him. The defendant's actions here were not the product of a stray fist or elbow during a tussle, but entailed two deliberate and vicious punches over the course of a struggle on the defendant's part to move towards the exit of a courtroom. Such serious conduct warrants a significant sentence, in light of the sentencing goals of just punishment and promoting respect for the law.

In imposing sentence, the Court should also consider the goals of both general and specific deterrence. As to the former, and as noted above, Deputy United States Marshals are entrusted with the solemn duty to protect court personnel and the public; they put themselves at risk in doing

Hon. Paul G. Gardephe
April 3, 2018
Page **4** of **5**

so. It is important that any sentence imposed in this case deter those who would engage in violent conduct against the Marshals, whether in an effort to escape from custody or out of frustration.

Specific deterrence in this case goes hand in hand with the need to protect the public from further crimes of the defendant. Although the defendant has no criminal history, he has a troubling recent history of violence, assaultive behavior toward law enforcement officers, and disregard for legal authority. As noted in the PSR, the defendant was arrested in April 2015 for assaulting federal officers and resisting arrest at 26 Federal Plaza. (PSR ¶ 52.) He was arrested federally on May 26, 2015, for assaulting federal officers, again at 26 Federal Plaza, during an outburst at the Office of the National Labor Relations Board. (PSR ¶ 55.) In September 2015, on a public sidewalk during the day, the defendant used a baseball bat to shatter the glass window of the building of a former employer.[2] And in October 2015, Aswat was arrested for trespassing after he jumped past a security gate and refused to leave an office at 33 Whitehall Street. (PSR ¶ 53.) A sentence within the Guidelines range is necessary to deter the defendant from engaging in similar conduct in the future, as well as to protect the public.

To be sure, the Government recognizes that the defendant's case presents mitigating factors in addition to the aggravating ones described above. The Court is well aware of the history of this case, and of the defendant's mental illnesses that may well have contributed to the conduct described herein. These factors weighed heavily in the Government's decision to offer a plea to only one count of assault that would encompass both of the defendant's federal cases; they also factored heavily in the Government's agreement (highly unusual in a case such as this one) to a bail package subsequent to the defendant's guilty plea on the condition that he receive inpatient mental health treatment and that he consult with a psychiatrist to determine whether medication would be appropriate. The record provided by current defense counsel suggests that continuing intensive treatment – for which the Government has advocated throughout the course of this case – and medication have resulted in immense improvements in the defendant's mental condition. The medication regime which has resulted in such significant improvement by the defendant could be maintained during a term of imprisonment, and a prison with a medical facility would provide the defendant with the treatment that previously proved effective in restoring the defendant to competency.

---

[2] This conduct underlies Aswat's arrest for criminal mischief, which the PSR erroneously states occurred in September 2017 (*see* PSR ¶ 54). The incident in fact occurred in September 2015.

Hon. Paul G. Gardephe
April 3, 2018
Page **5** of **5**

### V.     Conclusion

      For the reasons set forth above, the Government respectfully submits that a sentence within the Guidelines range of 27 to 33 months is appropriate in this case and would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

                                                              Respectfully submitted,

                                                              GEOFFREY S. BERMAN
                                                              United States Attorney

                                           By: _____/s/_____
                                                     Elizabeth A. Hanft
                                                     Assistant United States Attorney
                                                     Southern District of New York
                                                     (212) 637-2334

cc:     Thomas H. Nooter, Esq. (by ECF)